Government Unit, United Nations Penitentiary Unit, United Nations Center for the Subject of the Court of Appeal. I am here to address the three issues appealed by Korus, namely the Department of Commerce's decision to reclassify Korus's JIT sales as CEP versus EP, as well as the Department of Commerce's decision to reclassify Korus's JIT sales as CEP versus EP. I'm here to address the three issues appealed by Korus, namely the Department of Commerce's decision to reclassify Korus's JIT sales as CEP versus EP. I am here to address the three issues appealed by Korus, namely the Department of Commerce's decision to reclassify Korus's JIT sales as CEP versus EP. I am here to address the three issues appealed by Korus, namely the Department of Commerce's  I am here to address the three issues appealed by Korus, namely the Department of Commerce's Sunset Review determination. The time for appeal of that determination has not yet run. And thirdly, the Department of Commerce's Sunset determination hinged in large part on the revocation of the order resulting from the Section 129 determination, which determination has already been challenged in front of the Court of International Trade by the U.S. producers. So for those three reasons, we don't believe that the issue has moved, in that judicial economy would counsel that this Court should proceed to decide the issue, because at this point it's still live. Well, the order says that this April 9th memorandum says this order will be revoked. That's correct, Your Honor. There is a question pending as to the time period during which the order is revoked. And my colleague, Mr. Cunningham, when he addresses the issue that he'll be addressing which revolves around a change in U.S. law, he may get into the question as to the time periods of revocation. However, the order was revoked with respect to entries after a certain date, and there are still questions pending as to the effect of that revocation with respect to prior unliquidated entries, which these would constitute because these came in prior to the revocation effective date. Does that respond to Your Honor's question? With respect, I might as well move on to that issue since we're on that issue. Our position is that both the determination as to duty absorption as well as, of course, this JIT sales, neither of the determinations recognizes business realities. And in that respect, the determinations are flawed as are the CITs that are in favor of those determinations. Counsel, don't you have an exhaustion problem here? It's our position, Your Honor, that there are several exceptions to the exhaustion doctrine that apply with respect to the duty absorption finding. First of all, we have the futility exception. The Congress Department has applied a standard for about 10 years at this point that no one's been able to meet. The Congress Department demands that if you're going to be found not to have absorbed anti-dumping duties as responded, you need to prove that you have an irrevocable commitment from a customer to pay whatever anti-dumping duties will ultimately become due whenever that's due. As a matter of business reality, it's not logical to think that a customer is going to commit to pay at some unknown time in the future some unknown amount that it has no control over. The Court of International Trade, indeed, in a case that we cite at page 56 of our brief, the February Deferred to Charlotte Law case, recognized that as a matter of commercial sense, it's not a tenable requirement. Nevertheless, so far, no one has called commerce on it, and the Court of International Trade has continued to sustain a standard that, as a practical business matter, no company could ever meet. And indeed, no one has met it. And it is our position that it would be futile for Corus to continue to argue that particular point. We did raise the issue after the Commerce Department said it was conducting a duty absorption inquiry. We provided information on the record. The Commerce Department, in the preliminary determination, said, sorry, Corus, you haven't satisfied the standard. You've absorbed anti-dumping duties consistent with our irrebuttable presumption, which we maintain as an irrebuttable presumption. So therefore, for us to continue to argue the matter. Your time is up. Do you want to give the rest to Mr. Cunningham, or should we start to use his time? No. I'll give the rest of the time to Mr. Cunningham, and then maybe we'll have some rebuttal time. Thank you. Thank you. Ms. Keppel is always generous with me. Your Honor, it's good to see you again. Your Honor, it's good to meet you for the first time. I'm here to argue one specific issue that relates to whether the Department of Commerce, in light of the now-completed implementation of WTO decisions, has the authority to impose duties on the imports that are subject to disappeal. This is not a challenge to the implementation. It's not a challenge to the methodology used by Commerce to compute the duties. It is a question of whether Commerce has authority to impose duties when what they've done in this implementation is change the law, that is, the methodology used in this implementation. Before the law was changed, before this order was revoked, there was a different regime in place. That's correct. This, of course, has upheld in numerous decisions. That's correct. We don't what? We've got our authority to retrospectively change that law beyond the dates set by the Commission. The definition of retrospectivity that this Court has adopted in this situation, that is, the change of the law relating to an anti-dumping proceeding, is that it's retrospective only if it relates to—in retrospectively turns on the date of liquidation, not on the date of entry. There has been no liquidation of these entries. The new law, under your definition in Parkdale, applies to the new entries. That would be our position. Frankly, Your Honor, it's not for you to decide that now, though, because the Supreme Court has told you that you need to remand that to the Department of Commerce. Well— Please. Sure. When you say the Supreme Court, you mean the two Supreme Court cases that you've relied on, not in this—any of the preceding two? Oh, no, no, no, no. The precedent of the Supreme Court is that where a change in law has occurred while the case is on appeal, where the change in law has implications for the outcome of the case, it is to be remanded to the Department of Commerce to determine, in the first instance, how that should affect the change in law. But where it isn't clear what the agency would do. It's a kind of— Correct. —a kind of application. Correct. And I'm going to explain to you why it's really not clear what the agency would do. Well, okay, but you're going to focus, I assume, on the Fourth Administrative Review. I am actually going to focus on that and other aspects. All right. Let me just briefly review for you what Commerce has done and what the U.S. has done in implementation here, which is now complete, which we don't challenge. Change the law in a 123 proceeding, a proceeding which does not have any language in statute or in the SAA that refers to application to future entries. And as such, the governing rule for that is Parkdale, not anything in the SAA. Second, they have changed—they have reversed—they have applied that change in law to this case, this proceeding, recomputed the margin, found the original determination of dumping, and the new methodology is not valid. There is, I submit to you, no valid determination of dumping, therefore, at the moment. Finally, in a separate proceeding, Section 129, they have revoked the order in this case. They have said that they have revoked it as to future entries, and they have said explicitly that they have taken no position yet on the application of that revocation to prior unliquidated entries. And let me read you what Congress has said just two weeks ago on that point. Where did they say that? I'm going to have to read that to you. And they said— Is that on record, or is that something— In two places. First of all, in the fourth review, they said, Section 129 does not speak to the applicability of this revocation to prior entries. They remain subject to potential duty liability. Potential clearly means they're right where they were before. That is, duty liability is to be decided by commerce in the review procedure, which they have not done. OK. Well, but— Where are you going to read from? I'm going to read from their brief two weeks ago to the Court of International Trade in a separate challenge to another review in this case. If I may, I will read— Is that supplying us here in the supplemental material, or— I'm afraid it's not. It was just done very recently. A couple days ago. It is entirely consistent with what they said in the 129 determination, which they said this determination doesn't apply. It has no relevance to the prior unliquidated entries. It's consistent with what they said in the fourth review. It doesn't apply. We have to make a determination in the review. And what they said was the statute does not speak to prior unliquidated entries except to say that a section 129 discrimination itself does not affect those entries. The government has never stated otherwise. Therefore, they have a decision left to make. All we're telling you is you need to remand it to them to make it. Now, I wish I didn't have to make this argument. Cora says multiple millions of dollars in cash deposits, which it wants to get back, and it thoroughly believes that there is no authority now for imposing duties. But unfortunately, the cases don't allow me to make that argument. They say that you're not to make that judgment in the first instance. You are to remand it to Commerce to do so. And that's what we're urging them to do here. And there's good reason to do that because it will be a complicated decision. Do you want to reserve the rest of your rebuttal? I would like to reserve the rest of it all. Thank you, Mr. Bernstein. Ms. Burke, I believe, will be first. May it please the Court. I wasn't planning to, but I'll start with zeroing. And I'd like to point out a couple of things that have happened in the very recent past that we didn't inform the Court of. The arguments that Mr. Cunningham is making right now with respect to the possibility of a remand have already been made in Cora's petition for service. The Supreme Court denied, I think it was either June 25th or June 27th. So at any rate, a couple of things. You're not asking us to read anything into a cert denial, right? Well, other than that argument. Other than that cert was denied. Correct. There are two events that occurred that Cora's relies upon. First, Congress's section, what they call Section 123 determination, which... Can you address the comment that Mr. Cunningham was making last when he said in a recent petition to the Court of International Trade you had pointed out that government policy has changed and it would necessitate a remand? That's absolutely not what we said. I believe that what Mr. Cunningham is referring to is the government's brief, maybe two things, the government's brief before the Court of International Trade in our hearing for a preliminary injunction, Cora's hearing, and also the government's brief in opposition to Cora's petition for reconsideration from the Court of International Trade, which incidentally was denied last week. In that brief, we cite what we've always said, which is a Section 129 determination by statute operates prospectively and does not affect prior unliquidated entries, which means it doesn't speak to prior unliquidated entries. It says neither one thing nor the other about what shall happen to them. Well, it says nothing about them. Take me to the next step in your logic. Nothing's been said. The policy's changed. What do we do about that? Well, the policy has changed with respect to investigations. The policy has not changed with respect to administrative reviews, and Commerce has been quite clear about how… These are unliquidated items. These are unliquidated items subject to an administrative review. Do we know what that administrative review will do with those unliquidated items if we send it back? Assume now we send it back. Is it certain that you're going to say, oh, these are subject to the order in place? Yes. And that's just because? And why? It's because Commerce has already explained exactly how it intends to apply the new methodology such that there is one in place. And that's in the fourth administrative review that you provided, or one of the parts provided. Correct. And it's really everywhere, because in the 123 determination, Commerce says this applies to new and pending investigations. In the 129 determination, Commerce explains that it applies effective April 23, 2007, and does not apply as anything, any entries that occur prior to April 23. And then we have the fourth administrative review on top of all of that, which makes quite clear that Commerce does not intend to change its policy with respect to abuse. My understanding of our law is that we place the emphasis on the liquidation date rather than the administrative review. I think that was Mr. Cunningham's argument as well. Well, I think what Mr. Cunningham is trying to say is that when Commerce has perhaps changed its methodology and not explained how it intends that change to be applied, that perhaps a remand may be appropriate. But that's not what we have here. We have Commerce's very clear statements about exactly how this changing methodology is supposed to apply. And the overarching thing that the Court has to remember is that the changing methodology does not apply to administrative reviews at all. It only applies to investigations. Why is that from a policy standpoint? Why apply it to average-to-average and not average-to-transaction evaluations? Well, what Commerce is trying to do in an investigation is different from what it's trying to do in a review. So, for example, in an investigation, Commerce is trying to determine whether dumping is at a sufficient level to justify the imposition of an order. Whereas in an administrative review, by statute, Commerce is only looking at entries and trying to determine whether specific entries have been dumped. So, although Commerce has not articulated this rationale in any domestic proceeding as far as I know yet, it would make sense. Mr. Cunningham says he's recalculated the number of dumping. I can't really speak to that. I don't think I would be capable of recalculating it. This is obviously a pretty sophisticated computer operation that Commerce has going on. Am I characterizing our Timken decision right? Tell me if I am. Is our Timken decision sort of validated through zero methodology, zeroing methodology? It distinguished, at least in my read of it, between administrative reviews and investigative inquiries. Am I remembering it right? It did. The Court in Corus went on to say that for purposes of the actual statutory language, it's kind of a distinction without a difference because the statutory language that Commerce relies on in investigations and reviews is the same statutory language that permits zeroing. But as the Court also held, the statute doesn't require zeroing. And so to the extent that Commerce changes its methodology in some instances and not others, that change in methodology is going to be subject to the same standard of review that any change in methodology that Commerce decides to impose, which is whether it's reasonable. And perhaps that will be an issue someday. How much money are we talking about here? How much is caught in the administrative review process? In this particular review? Yeah, in this one. Somewhere in the neighborhood of $3 to $4 million, Mr. Cunningham, Mr. Cunningham can be more specific. Okay. That's what we're talking about. We have our answer from behind. Okay. I'd like to quickly move on to the other two issues in my remaining couple of minutes. First, with respect to Commerce's classification of CEP and EP sales, the statute requires Commerce, first and foremost, to determine the price at which a product is sold or agreed to be sold. So the first thing we need is price. The documents that Corus has provided Commerce are in the form of framed agreements and pro forma invoices, which Corus has explained to us are documents that are changed. Well, I don't want to put words in their mouth, but they said that changes are not infrequent and changes are not hypothetical. So to the extent that Commerce has to, is obligated by the statute to determine a price, an accurate price, to base its EP and CEP calculation, Can we talk about the framed agreements for one second? And just whether or not Commerce has changed its analysis of the framed agreements as to whether they are agreed to be sold. Are they satisfied? The framed agreements on their face certainly look like a confirmation of agreed to sale. But in fact, isn't it the case that Commerce sort of decided to determine after sort of investigation and questionnaires that in fact they weren't agreed to price and quantity of things. In fact, things were still open until the inventory was imported and then there was an actual customer that agreed to pay for them. Is that kind of what happened? Because obviously there's some concern about Commerce saying in one instance early on that the framed agreements are the confirmation of a sale and then later on saying no, they're not the agreed to sale as of that date. Is there some concern that Commerce is changing its position? Is that the question? Well, there is. They've raised a concern that Commerce is changing its position. Okay. Well, with respect to what Commerce has done in prior segments of this proceeding, namely the investigation and the first administrative review, Commerce has been pretty consistent. What happened in the investigation is that Commerce actually did rely upon these framed agreements in order to classify – or similar, not these framed agreements, but similar framed agreements to classify the sales as CEP sales. But didn't Commerce say, and I'm quoting here from the Federal Register, it provides the final written confirmation of the agreement when discussing what the framed agreement is.  Are you reading from the investigation Federal Register? Yes. Yes, 2001. Right. Well, frankly, the issue wasn't raised or litigated, as far as I recall, in the investigation. What happened in the first administrative review was Commerce determined that it probably made a mistake in the way that it was treating these framed agreements, and we requested the Court of International Trade to allow us to reclassify them on a remand. And the Court, as it notes in its decision here, denied that request. And so what we've done in the second administrative review is entirely consistent with what we wanted to do in the first administrative review. To the extent it's different from what we did in the investigation, I don't deny that. But Commerce has been clear that it's going in a different direction now. Ms. Burke, you're into Mr. Harris. I am, Your Honor. I just engaged him. We need to ask you a question. I just wanted to – because of the status of this issue of mootness on the absorption issue, have you heard Ms. Kipple's explanation for why in her view your submission that mootness is not – this is not believable? Could you respond to that? Sure. I believe what Ms. Kipple said is that there's still an outstanding determination to be made from the International Trade Commission. Well, she had three different grounds. She did. That was the one that I thought was most troubling. But it's, in fact, not troubling because all the International Trade Commission can do is make an injury determination where the Department of Commerce has found a likelihood of dumping. And as the Department of Commerce has made clear, there is no likelihood of dumping here. So it never goes to the – That's correct. Sorry. Or it – not that it never goes to it, but that the commission can't actually – Did any of you have occasion to look to likelihood of a material injury? Right. Thank you. Thank you, Ms. Burke. Ms. Guterres, you have four minutes remaining. In the police court, I'm Jeffrey Guterres of Scadamore. I'm chairing on behalf of the United States Steel Corporation. U.S. Steel, in the time that I have here today, I would like to focus on one of the three issues that's been raised. It's a zero-issue. And U.S. Steel certainly agrees with everything that Ms. Burke said on behalf of the government. Very quickly, on those points – Not quite everything. You don't agree with her argument that the Congress was free to make a determination as to zero-issue. Well, that is exactly right, Your Honor. In effect, that really is a fundamental aspect of this that requires rejection of everything that courts have already done with zero methodology. And that is, we argue that the statute requires the use of zero. The question of whether zeroing is required by the statute is a fundamental threshold question that this court must address. Should I send that back to Congress to weigh in light of the things that are changing? You certainly could do that, Your Honor. But I think it's playing on the face of the statute and given the structure of the statute and Congress' purpose in enacting the statute. Would you urge us to send it back to get that kind of assessment? Well, I would actually urge you to make that decision on your own, which I think you can do that. Now, if you felt the need to remand it back to Congress, I think you certainly could do that. But again, I think you can make that on the basis of the statute and its structure and purpose here. And the fact is, Congress' purpose and intent is judicially ascertainable here, and that purpose and intent is to require zeroing. Now, this Court's prior decisions did not find that the statute requires zeroing, but the critical provisions of Section 1677F1D of the statute were not considered in those decisions. Would you say were not considered? And I haven't gone back and looked at the briefs. Perhaps you have. Do you know if those arguments, those provisions were presented to the court and simply not discussed? Or do you think that they weren't presented to the court? Well, I can tell you, in the Timken case, they were not presented to the court. In the original Corus case, they were presented – I'm sorry, in the most recent Corus case, they were presented to the court. This court issued a procuring decision. So they were not – there was no – it was not addressed at all by the court. You mean Rule 36, not a procuring decision? Yeah, I think that's right. Oh. The sole purpose of Section 1677F1D is to dictate when weighted average or transaction-specific U.S. prices are to be used in calculating a company's dumping market. But if zeroing is not used, it makes no difference whether you use weighted average or transaction-specific U.S. prices. We get the same exact marginal results. In other words, if zeroing is not used, the provisions of Section 1677F1D are to be meaningless. Zeroing is required to give meaning and effect to those provisions. It really is as simple and straightforward as that. Now, if you look at Section 1677F1D, which is attached as an addendum to our agreement, it sets forth the comparison methods used by Congress in calculating dumping markets in normal investigations without targeted dumping, investigations with targeted dumping, and administrative reviews. These provisions clearly show that it was essential to Congress that a particular comparison method be used to calculate dumping markets, either by comparing normal values to weighted average U.S. prices or by comparing normal values to transaction-specific U.S. prices, depending on the circumstances of the case. These different comparison methods must have been intended by Congress to have different results. Without zeroing, however, it simply does not matter which comparison method is used. The end result will always be the same. For example, if zeroing is not used in an administrative review like the review at issue here, Congress will get the same marginal result, regardless of whether it compares normal values to weighted average U.S. prices or to transaction-specific U.S. prices. If zeroing is not used, it makes no difference whatsoever as to which of the two comparison methods is used. The end result will always be the same, and that can be shown to a mathematical certainty. All of this shows that the statute is not merely authorizing zeroing. It requires it. Thank you, Your Honor. Thank you. How many time do you have remaining? I think we're on four minutes. I think that would be plenty, Your Honor. Four minutes. Let me clarify a few quickly. First, please don't get confused and think this case is like Timken or like Korrestal. We are not challenging the method of computation used by commerce in the review. Our point is that commerce had no authority to impose duties, whatever the computation they used, whatever the rate of duty, because the order has been revoked and that question remains open for review determination as to its effect. And that the determination of dumping is no longer valid. And the policy seems to apply in investigations. Correct. And it is the investigation determination that we agree with commerce on had it be changed. They did, in fact, apply the new rule, the new methodology, the new law to this investigation. They said they were going to do so in their 1.3 decision, and they did. And the result of it was no dumping is appropriate to be found in that investigation. It is the effect of that that they have not taken into account, that they must take into account. And under Parkdale, it is to be taken into account on the basis of prospectivity determined by the— But Ms. Burke says if we send it back, they'll just do the same thing. Now, that brings me to my last point. You're doing my segues very well. They say they've determined all of this in the fourth annual review. Not so, Your Honor. First of all, they have not even addressed the effect of the 1.23 determination and its invalidation of the affirmative determination of dumping. Second, as to the 1.29 determination, they have said what they are going to do when they begin their discussion in this instance. I'm not quite sure what that means in this case or in the issue of zeroing. They say the department lacks sufficient experience in such situations to establish general guidelines, and they say 1.29 does not itself require them to make a decision either way. But let's suppose they had decided in the review number four that they weren't going to— that they rejected all these arguments, and they found they had authority. We believe that decision's wrong. We're going to appeal review number four. They have to make that same decision in this review so that we have the right to appeal that. That's what you have to remand for, at the very least, because that's the way judicial system operates. But I'm not sure why you're in a different position. If you go back and you get the same answer that you got in review four in this case, how does that put you in a different position with respect to your legal arguments that you're presenting now to us? First of all, we have no answer as to 1.23. They don't address 1.23 or its effect as they're required to do to determine the applicability of their change in methodology and the effect of that change in methodology. They haven't addressed that at all, so at the very least, we need to go back to that. Secondly, as to the 1.29 decision— Now, remember, this is a different case. It's not a pure 1.29 where they just changed it as a result of an investigation. This is a 1.23 with a different statutory scheme that has different consequences intended by the Congress when they change the law, and that's what they've done here. But anyway, go back to the 1.29. They've said they've made this determination in this case. It looks wrong to us. We're going to appeal it. It's not clear that they've made it because they say they lack sufficient experience with such situations to establish general guidelines. It's not clear they've made the same decision in our case. I'm not sure. I find their decision confusing in the fourth review. They sometimes seem to be talking about what's the appropriate method of calculation. Is there a difference between the two that— Between the reviews? Yeah, that we could, for some reason, think they would reach a different result? I don't know because it's not clear to me on what basis they made this determination here. Some of their lines seem to talk about the issue you were posing, Your Honor, which is, gee, is the methodology correct that we used in the review? That's not our argument at all. Our argument is to be authoritative. It's not clear how they reached that decision, and all of that needs to be clarified. And at the very least, if they're going to do that, we have to be given a chance to appeal it. Otherwise, our right as to those $3.5 million, $4 million worth of duties, deposits, is gone. Thank you, Your Honor. Our next case will be Cricket.